Frank MANIGAULT
v.
UNITED STATES of America.
Civ. A. No. 43553.

United States District Court,
E. D. Pennsylvania.

Aug. 26, 1970.

Robert C. Daniels of Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

John A. McMenamin of Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendant.

FINDINGS OF FACT, CONCLUSIONS
OF LAW AND JUDGMENT

TROUTMAN, District Judge.

This action is brought under the Admiralty Law as modified by the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 and the Public Vessels Act, 46 U.S.C. §§ 781–790 and pursuant to the Jones Act, 46 U.S.C. § 688 and the General Maritime Law.

The plaintiff, Frank Manigault, suffered injuries on the afternoon of September 18, 1966, while discharging duties aboard the U.S.N.S. Coastal Crusader. Testimony has been taken and evidence offered and introduced by both the plaintiff and the defendant. After due consideration thereof we make the following

I

*Findings of Fact*

1. Plaintiff, Frank Manigault, at age 26, became a crew member of the USNS COASTAL CRUSADER on May 9, 1966.

2. Between 1963 and 1965 the plaintiff had served in the United States Navy. Upon joining the Merchant Marine his Union status was designated Group II. As a member of Group II, he could obtain only those jobs which had not been filled by the more senior Union members in Group I.

3. Although plaintiff was desirous of sailing as an ordinary seaman, in order to work his way up to and attain the status of an able-bodied seaman, he took a job as a saloon messman aboard the USNS COASTAL CRUSADER on May 9, 1966, as he was a Group II member of the National Maritime Union at the time and did not have any priority with regard to choosing his employment classification aboard merchant vessels.

4. On the afternoon of September 18, 1966, at about 3:45 o'clock P.M., plaintiff was engaged in his normal and usual duties of washing and cleaning cups and saucers and other kitchen and dining ware and utensils in the saloon pantry.

5. At that time, plaintiff was performing his duties in the usual and customary manner when, while reaching into a sink of soapy water, he was caused to suffer lacerations on and about the left hand as a result of the presence of a broken glass in the bottom of the sink which had not been visible to him prior to that time.

6. Gilbert Shaw, the other saloon messman aboard the vessel, saw plaintiff pull his left hand out of the sink immediately following this occurrence and saw that the hand was bleeding.

7. The broken glass on which plaintiff cut his hand on September 18, 1966, was a piece of glass from one of the fragile glasses aboard the USNS COASTAL CRUSADER, which the steward aboard the vessel had been aware of for some time prior to the date on which plaintiff suffered his accident and injury and had indicated he would change or replace due to their fragility.

8. Between the time that the steward aboard the USNS COASTAL CRUSADER became aware of the presence of these fragile glasses aboard the vessel and the date on which plaintiff suffered his injury, the steward, an officer aboard the USNS COASTAL CRUSADER, did not take any action with regard to replacing, changing or removing the fragile glasses, a broken piece of which cut plaintiff's left hand on September 18, 1966.

9. Plaintiff immediately went to the Chief Mate in order to secure first-aid for the lacerations of the left hand.

10. Between September 18 and September 26, 1966, plaintiff received medical treatment from the Chief Mate aboard the USNS COASTAL CRUSADER and did not return to work as a result of the injury to his left hand which disabled him from his work during that period of time.

11. On September 26, 1966, plaintiff was seen and treated by Dr. Ferreira, in Recife, Brazil, who found plaintiff to be not fit for duty due to the injury that he had suffered to his left hand.

12. Plaintiff was repatriated by air to the United States.

13. Plaintiff reported to the facility of the public health service in Savannah, Georgia, on October 4, 1966 on which date he was admitted as an inpatient to the public health service hospital in Savannah, Georgia.

14. Plaintiff was confined as an inpatient at the Savannah, Georgia, public health service hospital from October 4 to October 20, 1966, during which time he was treated for a laceration of the flexor tendon of the left ring finger and had tendon-graft surgery performed on the left ring finger on October 17, 1966.

15. Following plaintiff's accident and injury of September 18, 1966, and before the tendon-graft surgery on October 17, 1966, plaintiff had lost the complete use and movement of the left ring finger and felt no sensation in that finger whatsoever.

16. Prior to plaintiff's accident and injury of September 18, 1966, he had no difficulty or disability whatsoever in his left ring finger or his left hand.

17. Following the tendon-graft surgery on October 17, 1966, plaintiff had some flexion in his left ring finger but does have permanent impairment of the left ring finger and left hand as a direct result of his accident and injury of Sep-

tember 18, 1966, aboard the USNS COASTAL CRUSADER.

18. Plaintiff was treated as an outpatient at the public health service in Savannah, Georgia, from October 27, 1966, to April 25, 1967, on which date he was made fit for duty.

19. On April 25, 1967, plaintiff registered to reship, but was unable to obtain employment, following his period of disability as a result of the accident and injury of September 18, 1966, until June 20, 1967, when he reshipped in the capacity of a messman aboard the S.S. U. S. MATE.

20. Plaintiff was completely disabled from any employment whatsoever as a result of the injury that he sustained aboard the USNS COASTAL CRUSADER on September 18, 1966, from September 26, 1966, to June 20, 1967, a period of eight and one-half (8½) months, during which time he did not perform any work whatsoever.

21. Plaintiff's average monthly earnings, including his basic minimum monthly wage, his compulsory overtime and his average additional overtime, during the period of his service aboard the USNS COASTAL CRUSADER, was in the amount of $517.80.

22. During the period of plaintiff's total disability, a result of his injury of September 18, 1966, in addition to losing his average monthly earnings of $517.80, he sustained economic losses in the amount of $156.97 per month as a result of his disability by virtue of his losing vacation benefits of $37.80 per month, pension and welfare benefits of $119.17 per month for a total of $674.77.

23. Approximately 8½ months during which plaintiff was on a not-fit-for-duty status, he sustained economic and pecuniary losses in the total amount of $5,735.55.

24. When plaintiff returned to his employment as a merchant seaman, he was no longer able to work in the capacity of an ordinary seaman in the deck department since he had a permanent loss of sensation in the left ring finger, a weakness in the left hand, a loss of power in the left hand, and difficulty performing manual functions with his left hand, such as tying lines, handling lines, handling wires, spicing wires and climbing ladders, all of which duties are an integral part of an ordinary seaman's or an able-bodied seaman's normal daily duties.

25. Plaintiff's permanent impairment and disability of his left ring finger and left hand, as described above, are a direct and proximate result of his accident and injury of September 18, 1966, aboard the USNS COASTAL CRUSADER.

26. As a result of plaintiff's permanent impairment and disability of his left ring finger and left hand, he has been unable to engage in employment as an ordinary seaman in the deck department aboard merchant vessels, although such employment has been available to him since June 20, 1967, when he first reshipped following his period of total disability as a result of his injury of September 18, 1966, and up to and including the present time.

27. Plaintiff became a Group I member of the National Maritime Union in 1968, which status gave him a priority with regard to choosing his employment classification aboard merchant vessels.

28. As of June 20, 1967, when plaintiff first reshipped following his period of total disability as a result of the injuries he suffered aboard the USNS COASTAL CRUSADER, an ordinary seaman's total monthly earnings were $15.00 more per month than those of a messman.

29. As of June 16, 1969, an ordinary seaman's earnings were $24.00 more per month than those of a messman.

30. As a result of plaintiff's permanent impairment and disability of his left ring finger and left hand and his consequential inability to work in the deck department as an ordinary seaman, he has sustained a past loss of earnings, for partial impairment to his earning capacity between June 20, 1967, and the present date, in the amount of $600.00.

31. Plaintiff's life expectancy, according to the Life Expectancy Tables of the United States Department of Health, Education and Welfare, is 37.1 years.

32. Plaintiff, being presently 29 years of age, and not celebrating his 30th birthday until December 15, 1970, presently has a work-life expectancy of 36 years.

33. Plaintiff has a permanent impairment of his left ring finger which prevents the finger from meeting the palm by about one inch and such is a direct and proximate result of his accident and injury of September 18, 1966, aboard the USNS COASTAL CRUSADER.

34. Taking into consideration plaintiff's past educational and employment experiences, his past employment record as a merchant seaman since February 1, 1966, and up to and including the present time, the credible medical testimony as to impairment, his work-life expectancy of 36 years, the permanent nature of plaintiff's injury of his left ring finger and his left hand and the degree of impairment, disability and limitation that such injury places upon his potential future employment opportunities, the wage rates and wage increases of the National Maritime Union for messmen, plaintiff's damages for future impairment of his earning capacity as a result of the injury that he sustained aboard the USNS COASTAL CRUSADER are computed at 10% of plaintiff's present approximate remuneration of $8,000.00 annually (allowing for service gaps due to vacation, vessel layup, end of voyage breaks, etc.). Such damages, reducing the amount thereof to present value at 6 per cent, are in the amount of $11,696.80.

35. Plaintiff has endured pain, suffering, discomfort and permanent loss of use and sensation of his left ring finger and left hand in the past and will continue to endure pain, suffering, discomfort and permanent loss of use and impairment of his left ring finger and hand in the future, for the remainder of his life, by reason of the problems and difficulties which he experiences as a result of his accident and injury of September 18, 1966, aboard the USNS COASTAL CRUSADER.

36. Plaintiff is awarded the sum of $3,000.00 to compensate him for all of the pain, suffering, discomfort, etc., which he has endured in the past, and for all of the pain, suffering, discomfort, etc., that he may endure in the future as a result of his accident and injury of September 18, 1966, aboard the USNS COASTAL CRUSADER.

37. Plaintiff is awarded damages in the total amount of $21,032.35 to compensate him for his past loss of earnings, his future impairment of earning capacity, and all the pain, suffering, discomfort and permanent impairment, disability and injury which he has endured in the past and which he may endure in the future as a result of his accident and injury of September 18, 1966, aboard the USNS COASTAL CRUSADER.

## II

### Conclusions of Law

1. This Court has jurisdiction over the subject-matter and parties to this suit.

2. The USNS COASTAL CRUSADER was unseaworthy by reason of the presence of a broken glass in the sink, filled with soapy water, in the saloon pantry at or about 3:45 P.M. on September 18, 1966.

3. The broken glass in the sink, filled with soapy water, in the saloon pantry was unseaworthy in that it was not reasonably fit for its intended purpose or use at that time or place.

4. Defendant was negligent, through its agents, officers, servants and employees, and breached its non-delegable duty and obligation and failed to provide plaintiff with a reasonably safe place in which to perform his duties by allowing and permitting the use of fragile glasses, which were most susceptible to breakage during a seagoing voyage such as the one that the USNS COASTAL CRUSADER

was engaged in on September 18, 1966, aboard that vessel.

5. Plaintiff was not guilty of contributory negligence.

6. The lacerations of plaintiff's left hand and the laceration of the flexor tendon of plaintiff's left ring finger, with all of the attendant pain, suffering, discomfort, impairment and disability with which plaintiff has suffered and has been afflicted since September 18, 1966, and up to and including the present time and with which he will continue to suffer and be afflicted in the future, were directly and proximately caused by the unseaworthiness of the USNS COASTAL CRUSADER, and the negligence of the defendant in its failure to provide plaintiff with a reasonably safe place in which to perform his duties on September 18, 1966.

7. A verdict is entered in favor of plaintiff and against the defendant in the total amount of $21,032.35, and plaintiff is entitled to judgment in that amount.

It is so ordered.